Good morning, your honors. Brian Lerner on behalf of the petitioner. Talk a little louder into the microphone. Okay. Is this better, your honor? Yes, much. Okay. Thank you. I'd like to talk a few minutes about the fact that we believe that the burden of proof that the BIA denied the asylum was incorrect or denied the motion to reopen. We're putting forth that there was sufficient evidence, at least a part of it. Are you talking about the first motion or the second? The changed in circumstances, so that would be the first motion. There was sufficient evidence to show that the petitioner subjectively feared prosecution through a declaration, that the fear is objectively reasonable, that was put forth by expert declaration, and that there was changed country conditions. This is a little bit different case than we usually get, so I want to kind of put it in perspective. It is so that on October 25th of 2004, the IJ issued a decision regarding past persecution and found that they did not, the conditions did not reach the asylum, and your client did not appeal. Isn't that correct? Your honor, she did appeal. On October 25th, 2004? She did appeal. It went to the BIA. It was then remanded back down. You got a decision way before October 25th. I'm past those remands. It went back down. There was another decision issued, and at that point, the IJ issued the decision, said there is no past persecution, we're not granting asylum, and there was no appeal. That was based upon a motion that pre-appealed, that went to the BIA, that was then remanded back down. But it wasn't appealed, was it? It wasn't appealed again. Well, it wasn't appealed, and in fact, at the time when the IJ did what the BIA suggested they ought to do, nobody appealed any further. Well, we would put forth, your honor, that the fact that it was previously appealed and that it was sent back down by the BIA with instructions of what the IJ was to do, the fact it was denied did not mandate that it had to be appealed again. And that if the decision the IJ gave, which was pursuant to what the BIA had told the IJ to do, the IJ then made a new decision, issued that decision, and nobody appealed it. Isn't that correct? That's correct, your honor. And at that point, then, I cannot really talk about the past persecution in that decision because that's stare decisis, unappealed. I agree. However, when we're really only talking about any new facts that your client put together in the second motion or in the first motion to reopen. That's correct. That's correct. And what is the standard of review for that motion to reopen? It would be an abuse of discretion. Yes. And, in fact, doesn't it say on a standard, the basic motion to reopen, that I must find that the BIA found no rational explanation, inexplicably departed from established policy, devoid of reasoning, contains only summary or conclusory statements. Isn't that the standard? That's correct, your honor. Do you think that I can say on this motion to reopen that that happened, those conditions are in that issuance? I believe so, your honor, because... Weren't there continued presence of similarly situated family members in Sri Lanka? Isn't the majority of the violence concentrated north of Colombo? Wasn't the cousin a public activist, member of parliament, not similarly situated to the cousin? I don't think there's any... That's an abuse of discretion. I understand, your honor. If the documents were looked at that made up the motion to reopen, the current conditions in Sri Lanka, it shows that there was violence in Colombo. It shows that there may have been some similarly situated situations regarding the family members and so forth. The point that I'm trying to make here is that it would seem here that it would have to pass the equivalent of a summary judgment in order to muster the BIA in this case having to grant this particular motion. If that were the case, there would be no need for this court to order it back in order to have a merits hearing or an individual hearing at the immigration court to take more evidence and to see what all of the facts are. Everything is not tried on the motion to reopen. All of the evidence is not presented on the motion to reopen. It's only sufficient amount so that the proffer which is given... A motion to reopen is not something that is highly deferential. I mean, it isn't something we really want to do. In fact, in general, on a motion to reopen, we give high deference to the BIA because we don't like motions to reopen. It should have happened the first time through. And therefore, no rational explanation. We had it quite a bit. Inexplicably departs from established policies. No. Devoid of reasoning. No. Only summary or conclusory statements. No. So how do I get there? Well, let's talk about the summary or conclusory statements. We had expert opinion from... It turned out to be her brother. That this person had five years of studying the situation. A Ph.D. He had multiple writings on this matter. And it was simply dismissed because he was the brother. His expert testimony that she would fear and be a subject of someone who would be tortured and or killed because of this politician that was killed was simply dismissed because he was the brother of the petitioner. Well, that's often done by juries. Exactly. And then we don't find abuse of discretion on the jury's part. I agree. But then it has to go back for there to be a determination if he's biased, if he doesn't have the expert qualifications. There was nothing in the record indicating that he was disqualified or that he was not able to make his expert opinion on this particular matter. It was just passed over in one sentence because he was the brother of the petitioner. And that alone we would put forth as sufficient in order to send it back. Let me ask you another question. It is my understanding, and I guess you'll agree with me, that the first motion was filed late. If you use the 90-day standard, yes. And so then you had to have changed country conditions in order to suggest that somehow that lateness ought to be eliminated. Well, how were these different changed conditions than what had been presented in the first case? Well, the politician who was killed, who was the cousin of her husband, did not occur until far after the original decision was made by the immigration judge. A public activist and a member of parliament not at all like her or her husband or her children, that does not weigh in that? Well, she's a family member, and the fact that he was killed was what gave rise to the condition to do the motion to reopen. Also, the documents that were submitted with the motion to reopen dated long after the original decision shows that the violence was escalating, that the tunnels rebels were committing more political assassinations. And all of this gave rise to past the 90 days as to why it was submitted at that time, because these didn't exist at that time. Let me ask you a question. Do you have to show in a motion to reopen that you would prevail with the additional evidence? You have to show that there's a bona fide application. You have to show that there's a reasonable likelihood that she could demonstrate the elements for asylum given the changed conditions. Exactly, the reasonable likelihood. Not that she must win or that the documents themselves will show under, again, a summary judgment standard that there's no way she cannot win. Now, if that's the standard, tell me what you presented that warrants us concluding that there was an abuse. Okay. There was the subjective fair persecution. That was submitted by the declaration of petitioner herself. There was the objective standard of persecution, which was submitted by the expert witness through the declaration submitted by him. What did that show? The bottom line is it showed that if she goes back to Sri Lanka, that there is a reasonable probability that because she's a family member of this politician that was killed, that she would be targeted by the Tamil rebels. It was specifically stated in there. In answering Judge Smith's questions, one of the elements that demonstrates an abuse of discretion is where the IJ simply got the facts wrong. And there are, in the evidence that you submitted to him, there were, you made arguments that there were places where he made findings that were inconsistent with the facts in the state records. And I don't think you explored that, about the violence in Colombo. That, Your Honor, because we submitted sufficient evidence, we believe to show the motion to reopen should be granted. That would come out through testimony and through additional evidence once it was sent back. We believe that there was sufficient evidence sent forth to show this. And I'd like to reserve the rest of my time. If I could get a minute for rebuttal. Can I get a minute, Your Honor? You don't have any time left. We took up so much of your time. I'll give you a minute at the end. Okay. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Patrick Lyon, appearing on behalf of Attorney General Eric Holder. Two and a half years after the immigration judge denied petitioner's first application for asylum, she filed a motion to reopen with the immigration judge, seeking to reapply for asylum based on alleged changed country conditions in Sri Lanka. The immigration judge denied this motion, finding no changed circumstances that would materially affect petitioner's eligibility for asylum, and the Board subsequently dismissed petitioner's appeal on this same basis. Nine months after the Board dismissed petitioner's appeal, she filed a second untimely and numerically barred motion to reopen, this time alleging eligibility to adjust her status. The Board denied this motion, finding that it was numerically and time barred, and additionally declined to exercise its sua sponte authority to reopen proceedings. Before this Court, petitioner could not demonstrate that either of these decisions were an abuse of the Board's broad discretion in dealing with motions to reopen. Now, the first issue before the Court today does concern the first motion to reopen, in which petitioner sought to reapply for asylum based on alleged changed country conditions in Sri Lanka. The time limitations that are normally associated with motions to reopen do not apply to motions to reopen seeking to reapply for asylum, so long as the alien can make certain showings regarding the evidence to be proffered. First, that evidence must establish changed country conditions in the country of removal, that evidence must be material and new or previously unavailable, and that evidence must establish petitioner's prima facie eligibility for asylum. In this case, both the immigration judge and Board properly denied this motion, because petitioner could not establish changed country conditions in Sri Lanka, and petitioner could not establish her prima facie eligibility for asylum. With petitioner's motion to reopen, she submitted two types of evidence. The first concerned ongoing terrorist attacks by the Liberation Tigers of Tamalilan, the LTTE, and the second set of evidence concerned the alleged assassination of petitioner's husband's cousin, a Sri Lankan parliamentarian. You're not disputing that the assassination occurred, you're just saying that it doesn't demonstrate that her objective here would be altered by that. Correct, Your Honor. Both that it would not establish her prima facie eligibility, and that the assassination itself does not constitute changed country conditions in Sri Lanka. You used the word alleged assassination. Well, it's certainly a murder, Your Honor. I use the term alleged assassination because at the time of the motion to reopen, and I still believe at this time, the investigation into this murder hasn't determined who committed it or for what reasons it was committed. This individual was certainly murdered, by whom and for what reasons I guess are still open to some debate in Sri Lanka. But this individual certainly was killed. But the death of this individual, this individual was killed in the eastern part of Sri Lanka, which is an area that was frequented by the LTTE. Petitioner resides in the west. This individual was politically active. The fact that Petitioner herself is not politically active, so she is not similarly situated to this individual, and there's simply no objective showing that Petitioner would fear persecution if removed to Sri Lanka, for reasons in any way connected to this individual's assassination or murder, or that she and her family would be targeted for persecution on account of this individual's murder. Isn't there evidence in the record that there's a pattern of targeting family members of the LTTE? Petitioner testified to that during the course of the underlying proceedings. But there wasn't significant objective evidence proffered with the motion to reopen, alleging persecution of family members. And even if this were the case, Petitioner still must show that in her circumstances that would be the case. And as Your Honor noted during the course of Petitioner's presentation, Petitioner's family continues to reside in Colombo unharmed, unpersecuted. Her husband and her children continue to reside in Colombo. There's been no allegations that these individuals have been physically harmed or persecuted, so there's simply no objective evidence in the record that would establish Petitioner's own eligibility for asylum if removed to Sri Lanka. Well, there is evidence in the record that there's been killings in Colombo, but that's been on the rise, isn't there? On the rise concerning certain sets of individuals, politically active members of the community, people in active opposition to the LTTE, there has been some evidence to demonstrate that. But attacks were occurring in Colombo prior to the filing of the motion to reopen, and in fact at the time of Petitioner's initial application for asylum. And there's still no demonstration that Petitioner would be able to establish her prima facie eligibility for asylum, based even on the evolving standards or attacks in Colombo because of that fact. Let me ask you something. I mean, this is obviously outside the records, and I know that. But we know that what's going on in Sri Lanka right now is the Tamil, I don't know if it's just the Tamil Tigers, but the Tamil people are all crowded into the north, and the Sri Lankans are, the Sri Lankan government, I mean, somehow they're trying to negotiate a peace treaty, but they're not surrendering. It seems to have escalated dramatically just in the recent weeks. And I'm just wondering, what if we were to deny her petition? Could she come in tomorrow and file a motion to reopen based on the circumstances there are today? I mean, I would think sending a Tamil person right now to Sri Lanka might not, I mean, I could see that the circumstances have changed dramatically just in recent weeks. To answer the first, or I guess the second part of your question first, there's certainly nothing that would prevent Petitioner from filing a motion to reopen based on changed country conditions if she so desired. Regarding the actual existence of changed circumstances, and I recognize as well this is outside the record, but my understanding is that it's very concentrated in the northern part of the country, not even in the north and the east as it was. So I wouldn't want to hypothesize on her success with that motion, but that's certainly an unavailable remedy. But concerning this motion to reopen, Your Honors, I think at the time that it was denied by the immigration judge and subsequently by the board, Petitioner had failed to establish any material change in country conditions, or that taking into account the then current state of country conditions, she would be able to establish her eligibility for asylum. Is she in custody right now? Your Honor, at the time the Petitioner's brief was filed, she was not in custody, and I'm unaware that she's since been taken into custody. Now concerning the second motion to reopen, Your Honor, this time filed directly with the board, in this motion Petitioner sought to apply for adjustment of status under section 245I of the Immigration and Nationality Act. The board denied this motion, and this decision as well was a proper exercise of its discretion because this motion was numerically and time barred, and because Petitioner is statutorily ineligible for further consideration of adjustment of status. Now concerning the first independent and dispositive basis on which the board denied this motion, it was numerically barred. Aliens are entitled to only one motion to reopen during the course of proceedings. Petitioner filed a previous motion to reopen with the immigration judge, which is in fact the issue before the court today as well, so this motion was certainly numerically barred. It was also time barred as it was filed over six months after the board's decision denying her first motion to reopen, and no exceptions apply, and Petitioner is also statutorily ineligible for any further consideration because of her failure to voluntarily depart consistent with that order. Now the only other issue pertaining to that second motion to reopen is the board's decision declining to exercise its sua sponte authority, and this is a decision that this court has consistently held that it lacks jurisdiction to review because it's a decision committed to the agency's unfettered discretion. So concerning both motions to reopen, Your Honor, the board's decision was well within its broad discretion in dealing with such motions, and these petitions should be denied. Let me ask you one question, which is of some interest to me. The October 25, 2004 decision by the IJ was not appealed. It was issued after a remand from the BIA. What is the effect of that from the government's standpoint? From the government's standpoint, the remand in that circumstance was explicitly to allow Petitioner to post a voluntary departure bond. There had unfortunately been a mailing error, so the immigration judge reissued the decision. If Petitioner had wanted to appeal the initial denial of her asylum application, then the government's position would be that she would have had to file an appeal with the board from that decision. But because that never occurred, there's no aspect of the underlying proceedings, that is Petitioner's first asylum application, that would be before this court on review or which the court should consider in ruling on the motions to reopen. If a motion to reopen is granted, though, doesn't that reopen all the proceedings? That's an interesting question, Your Honor. It does reopen all the proceedings. Were you asking specifically in regards to the voluntary departure? No. Suppose that the board had granted the first motion to reopen here and said, yeah, there's changed conditions, so we're going to reopen proceedings, let it go back. Doesn't that open up the whole proceeding below? Correct. It opens up the application for asylum. Right. Petitioner would be able to apply for asylum again as if no final order of removal had been entered. So as to this, then, as to the appeal of this motion to reopen, then I understand the government is really saying there is really no res judicata effect of not having appealed the first motion or the first application for asylum, that we can still look at past persecution in the same way. Well, Your Honor, I don't think there's any reason to look at past persecution in the context of the motion to reopen, unless the motion is actually granted. In the context of the motion, I see my time is about to expire. If I could finish answering this question. In the context of a motion to reopen, they must establish prime and fascia eligibility on evidence that's distinct from that offered in the underlying proceedings that's new since the course of those proceedings. So I would submit that the past persecution question would not be before the court. But she only offered evidence for fear of future persecution. Correct, Your Honor. Her focus of her motion was on the alternative to past persecution, that she had a subjective and an objectively reasonable fear of future persecution, if she were to go back to Sri Lanka. Correct, Your Honor. I realize that she has not voluntarily departed and not necessarily filed all the things she should have filed in a timely way and everything. But I have to just mention that I was really troubled by the original immigration judge decision, which was done by Anna Ho. When you read her section on analysis of facts and law, she says that the petitioner is credible, and then she has a sentence in here, the respondent failed to meet his burden of proof that anyone in Yugoslavia is interested in him due to any of the five enumerated grounds of asylum. It kind of calls into question whether her original proceedings were fair. I know that doesn't bear on this, but it's a little troubling aspect of this case. I can see that, Your Honor. I think the decision would have been the same. I don't think she did establish eligibility. With the I.J. Ho, it would have been the same. I know. It's just too bad that that happens. Thank you. Thank you. Just a couple small points. On the issue of the prima facie case, we're putting forward that a prima facie case was made. The discussion here this morning about whether the politician was murdered or assassinated or for what reason, all of that would come out in the actual hearing itself. We're putting forth the actual prima facie case was made. And then finally, on the sua sponte reopening, we would put forward that there are exceptional circumstances. And so far as we put forward evidence, there could be torture, death, all this stuff. Plus, she'll be guaranteed a 10-year bar if she leaves. She doesn't have any waivers against the 10-year bar. So we would submit on that, Your Honors. How old is she now?  Thank you, Counsel. Thank you, Your Honors.
judges: Wardlaw, Paez, Smith N. R.